## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

USTAWI BIOMEDICAL RESEARCH )
INNOVATION AND INDUSTRIAL )
CENTERS OF AFRICA, INC.,     )     Civil Action File No.:
                             )
    Plaintiff,              )     _____
                             )
v.                           )
                             )     JURY TRIAL DEMANDED
MICHAEL KARUU,               )
                             )
    Defendant.              )

## **COMPLAINT**

COMES NOW Ustawi Biomedical Research Innovation and Industrial Centers of Africa, Inc. ("UBRICA") and files this its Complaint against Defendant Michael Karuu ("Defendant Karuu") and respectfully shows this Court as follows:

## **THE PARTIES**

### 1.

UBRICA is a Delaware corporation with its principal place of business in the United States in New Hampshire, located at 54 Hilltop Place; New London, New Hampshire 03257.

2.

Defendant Michael Karuu is a citizen of the State of Georgia and a Georgia resident who may be served with process at 228 Somerset Drive; Dallas, Georgia 30132 or otherwise as provided by law.

**JURISDICTION AND VENUE**

3.

As a citizen and resident of the Northern District of Georgia, Defendant Karuu is subject to the personal jurisdiction of this Court.

4.

This Court has subject matter jurisdiction over all counts of this Complaint pursuant to 28 U.S.C. § 1332(a).

5.

The matter in controversy in this action exceeds the sum of $75,000.00, exclusive of interest and costs.

6.

The action is between citizens of different States.

7.

Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Karuu is a resident of the State of Georgia and resides in this judicial

district.   Additionally, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district.

8.

This action is governed by Georgia law.

**FACTUAL ALLEGATIONS**

9.

UBRICA is primarily located in Nairobi, Kenya and focuses on developing sustainable, high-quality health systems in Kenya, with plans to expand throughout Africa, by creating owners, producers, and consumers of health.

10.

UBRICA brings investors together from across the globe to merge resources and create a powerful pool of monetary resources in order to fund activities including, but not limited to, building and maintaining health clinics, research centers, and manufacturing centers to produce health and medical products.

11.

UBRICA is a registered business entity in Kenya.

12.

UBRICA was formed as a Delaware corporation on August 21, 2014.

13.

UBRICA's Corporate Bylaws were adopted on September 9, 2014.

14.

A true and correct copy of UBRICA's Corporate Bylaws is attached hereto as Exhibit A.

15.

Dr. Macharia Waruingi ("Dr. Waruingi") is the Chairman of UBRICA's Board of Directors (the "Board") and its President and Chief Executive Officer pursuant to Article IV, Sections 6 and 7 of UBRICA's Corporate Bylaws.

16.

Defendant Karuu was elected as the Vice President and Chief Financial Officer/Treasurer of UBRICA on September 9, 2014.

17.

Article IV, Section 10 of UBRICA's Bylaws provides that the Chief Financial Officer/Treasurer

> shall keep and maintain, or cause to be kept or maintained in accordance with generally accepted accounting principles, adequate and correct accounts of the properties and business transactions of the corporation, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, capital, earnings (or surplus) and shares.

18.

Article IV, Section 10 of UBRICA's Bylaws also provides that "[t]he books of account [of UBRICA] shall at all reasonable times be open to inspection by any Director [of UBRICA]."

19.

As UBRICA's CFO/Treasurer, Defendant Karuu was responsible for the management of all UBRICA's finances, including the financial reporting, accounting, and record keeping of UBRICA.

20.

Defendant Karuu was responsible for documenting all investments made by UBRICA's investors and issuing the proper number of shares in UBRICA to its investors.

21.

While acting as UBRICA's CFO/Treasurer, Defendant Karuu opened at least two bank accounts with Bank of America in UBRICA's name: (1) a checking account ending in -4591 ("BOA Checking Account") and (2) a savings account ending in -9120 ("BOA Savings Account"). The BOA Checking Account and BOA Savings Account are hereinafter collectively referred to as "BOA Accounts."

22.

Upon information and belief, Defendant Karuu also opened accounts with Wells Fargo and Paypal in UBRICA's name.

23.

During Defendant Karuu's tenure as UBRICA's CFO/Treasurer, Defendant Karuu failed to provide UBRICA's complete financial documentation to members of UBRICA's Board of Directors including Dr. Waruingi.

24.

During Defendant Karuu's tenure as UBRICA's CFO/Treasurer, Defendant Karuu failed to maintain adequate and correct accounts of the properties and business transactions of UBRICA.

25.

Despite numerous requests by UBRICA, Defendant Karuu repeatedly failed to provide access to and allow inspection of the books of account, financial statements, and records associated with all accounts held in UBRICA's name with any financial institution.

26.

Upon information and belief, Defendant Karuu failed to cause UBRICA to file federal and state tax returns for UBRICA for multiple years during Defendant Karuu's tenure as UBRICA's CFO/Treasurer.

27.

On several occasions during Defendant Karuu's tenure as UBRICA's CFO/Treasurer, Defendant Karuu represented to the members of UBRICA's Board of Directors that he had been preparing the financial statements of UBRICA and that he would present the financial statements to the Board of Directors shortly.

28.

Despite these repeated representations, UBRICA received no financial statements, no general ledgers, no tax returns filed by UBRICA, and no bank statements of any accounts held by UBRICA at any financial institution during Defendant Karuu's tenure as UBRICA's CFO/Treasurer.

29.

In December 2020, Defendant Karuu represented to UBRICA that he had retained the services of an accounting firm to prepare financial documents for UBRICA.

30.

When pressed to provide the contact information of this accounting firm, Defendant Karuu supplied Dr. Waruingi with the name of an individual.

31.

In January 2021, Dr. Waruingi contacted the individual who was allegedly retained to prepare UBRICA's financial documents.

32.

In the course of this conversation, Dr. Waruingi learned that the individual was located in Oklahoma, had not been retained by UBRICA, and that he was a friend of Defendant Karuu who had simply provided Defendant Karuu with some guidance on how to use Quickbooks.

33.

On December 29, 2020, by a vote of UBRICA's Board of Directors and in accordance with UBRICA's Corporate Bylaws, Ms. Beatrice Mwarangu was voted as UBRICA's CFO/Treasurer.

34.

Following Ms. Beatrice Mwarangu's appointment as UBRICA's CFO/Treasurer on December 29, 2020, UBRICA was able to obtain a portion of the bank statements for the BOA Checking Account and BOA Savings Account.

35.

UBRICA's examination of the bank statements revealed several significant improper acts taken by Defendant Karuu, each of which were concealed by Defendant Karuu from UBRICA.

36.

Article II, Section 6 of UBRICA's Corporate Bylaws prohibits directors from receiving any salary for their services on behalf of UBRICA. Directors are only to receive a fixed sum and expenses of attendance for each regular and special meetings of UBRICA's Board if allowed by a resolution of UBRICA's Board.

37.

In violation of Article II, Section 6 of UBRICA's Corporate Bylaws, Defendant Karuu paid himself a salary from the funds in UBRICA's BOA Checking Account in an amount of at least $204,299.56 for the time period beginning June 20, 2017 through April 14, 2020.

38.

Defendant Karuu concealed the payments made to himself from UBRICA.

39.

No resolution of UBRICA's Board permitted Defendant Karuu to receive a fixed sum or a reimbursement of any expenses associated with his attendance at any regular or special meetings of UBRICA's Board.

40.

In violation of UBRICA's Corporate Bylaws, Defendant Karuu used UBRICA's BOA Checking Account to pay for air travel, hotels, rental cars, cab fare, and Uber.

41.

Defendant Karuu concealed the payments for travel-related alleged in Paragraph 40 from UBRICA.

42.

Through a series of three (3) transactions in May 2018, Defendant Karuu transferred a total of $110,000.00 from the BOA Checking Account to the BOA Savings Account.

43.

On June 26, 2018, Defendant Karuu wired a total of $120,146.66 from UBRICA's BOA Savings Account to his daughter, Annestella N. Khirrecu.

44.

Defendant Karuu did not have authority from UBRICA to make the transaction and transfer of UBRICA funds to his daughter Annestella N. Khirrecu alleged in Paragraph 43.

45.

Defendant Karuu concealed the transaction and transfer of UBRICA funds to his daughter Annestella N. Khirrecu that is alleged in Paragraph 43 from UBRICA.

46.

Defendant Karuu failed to provide any explanation to UBRICA of the transaction and transfer of UBRICA funds to his daughter Annestella N. Khirrecu that is alleged in Paragraph 43.

47.

Annestella N. Khirrecu has no affiliation with UBRICA and was not entitled to receive any amount of funds from UBRICA.

48.

Moreover, on multiple occasions, Defendant Karuu used UBRICA's BOA Checking Account to transfer UBRICA's funds to his wife, Rose Kirechu.

49.

Defendant Karuu transferred at least $12,760.00 of UBRICA's funds in a series of multiple transactions to his wife Rose Kirechu.

50.

Defendant Karuu did not have authority from UBRICA to make the transactions and transfer of UBRICA funds to his wife Rose Kirechu that are alleged in Paragraph 49.

51.

Defendant Karuu concealed the transactions and transfer of UBRICA funds to his wife Rose Kirechu that are alleged in Paragraph 49 from UBRICA.

52.

Defendant Karuu failed to provide any explanation to UBRICA of the transactions and transfer of UBRICA funds to his wife Rose Kirechu that are alleged in Paragraph 49.

53.

Rose Kirechu has no affiliation with UBRICA and was not entitled to receive any amount of funds from UBRICA.

54.

Upon information and belief, Defendant Karuu is a shareholder and CEO of Streams of Faith Investments, Inc., a corporation registered in Georgia ("Streams of Faith").

55.

Defendant Karuu transferred at least $3,000.00 of UBRICA's funds to Streams of Faith.

56.

Defendant Karuu did not have authority from UBRICA to make the transaction and transfer of UBRICA funds to Streams of Faith that are alleged in Paragraph 55.

57.

Defendant Karuu concealed the transaction and transfer of UBRICA funds to Streams of Faith that are alleged in Paragraph 55 from UBRICA.

58.

Defendant Karuu failed to provide any explanation to UBRICA of the transaction and transfer of UBRICA funds to Streams of Faith that are alleged in Paragraph 55.

59.

Streams of Faith has no affiliation with UBRICA and was not entitled to receive any amount of funds from UBRICA.

60.

During his tenure as UBRICA's CFO/Treasurer, Defendant Karuu used UBRICA's BOA Checking Account as his personal bank account.

61.

UBRICA's examination of the BOA Accounts revealed hundreds of unauthorized transactions in which Defendant Karuu used UBRICA's funds for purely personal expenses, including but not limited to, payments made to grocery stores, medical offices, gas stations, and restaurants.

62.

By way of example, Defendant Karuu used the BOA Checking Account for what appears to be recurring credit card payments to Citicard and Best Buy for personal expenses not authorized by UBRICA.

63.

By way of further example, Defendant Karuu made several unauthorized ATM withdrawals of UBRICA funds from the BOA Checking Account.

64.

The total amount of UBRICA's funds improperly used by Defendant Karuu for his personal expenses is at least $435,046.84.

65.

Defendant Karuu concealed the transactions using UBRICA's BOA Checking Account that are alleged in Paragraphs 61 – 64 from UBRICA.

66.

In 2015, unbeknownst to UBRICA, Defendant Karuu obtained a loan in the amount of approximately $120,000.00 from FEP Sacco Society, Ltd., a savings and credit cooperative society based in Kenya ("FEP Sacco Loan").

67.

Upon information and belief, Defendant Karuu secured the FEP Sacco Loan through the improper use of UBRICA's funds.

68.

Defendant Karuu was not authorized by UBRICA to encumber any assets of UBRICA.

69.

Defendant Karuu defaulted on the FEP Sacco Loan.

70.

FEP Sacco is now seeking repayment of the FEP Sacco Loan from UBRICA.

71.

UBRICA received no benefit from the FEP Sacco Loan.

72.

Defendant Karuu concealed the transactions related to the FEP Sacco Loan that are alleged in Paragraphs 66 – 67 from UBRICA.

73.

Upon information and belief, during his tenure as UBRICA's CFO/Treasurer, Defendant Karuu, without authorization, issued shares of a subsidiary entity of UBRICA to himself and his friends without consideration paid for the shares.

74.

Defendant Karuu concealed the transaction and transfer of UBRICA shares that are alleged in Paragraph 73 from UBRICA.

75.

Upon information and belief, during his tenure as UBRICA's CFO/Treasurer, Defendant Karuu knowingly accepted fraudulent invoices

16

submitted to UBRICA from entities owned by his friends, and paid the fraudulent invoices using UBRICA's funds.

76.

Defendant Karuu concealed the transaction and transfer of UBRICA funds that are alleged in Paragraph 75 from UBRICA.

77.

As of the date of this Complaint, Defendant Karuu no longer holds any position on UBRICA's Board of Directors, other than as a member, and is no longer an officer of UBRICA.

## COUNT ONE
## DEMAND FOR AN ACCOUNTING

78.

UBRICA hereby reasserts and realleged the allegations contained in the above paragraphs as if fully set forth herein.

79.

Having been deprived of the benefits of certain ownership and management interests in UBRICA, as well as denied access and/or control over accounts of UBRICA, UBRICA is entitled to an accounting of all the financial transactions of UBRICA for the time period beginning September 9, 2014 through and including the pendency of this action.

80.

Moreover, as there is sufficient evidence to establish the diversion and misappropriation of UBRICA's assets and resources, UBRICA is entitled to an accounting of all transactions between UBRICA and Rose Kirechu and/or Annestella N. Khirrecu and/or Streams of Faith and/or entities in which Ms. Kirechu, Ms. Khirrecu, and/or Streams of Faith have an ownership interest or control.

81.

UBRICA has previously requested access to the complete books and financial records of UBRICA kept and retained by Defendant Karuu, but to date, Defendant Karuu has refused to produce the requested documents.

82.

UBRICA demands that Defendant Karuu produce the complete books and records for UBRICA for the time period beginning September 9, 2014 through the pendency of this action and provide UBRICA with an accounting for the assets and liabilities of UBRICA, along with supporting documentation, to allow for an independent determination of the proper calculation of the assets and liabilities for UBRICA.

83.

UBRICA further demands that Defendant Karuu produce all documentation, including receipts or other evidence of payment, for each transaction Defendant Karuu made using any account held in UBRICA's name at any financial institution or using any funds intended for or belonging to UBRICA.

84.

UBRICA requests the issuance of an order requiring Defendant Karuu to make such information and documentation available to UBRICA as part of the discovery process in this case.

85.

If Defendant Karuu fails to comply, UBRICA requests that it be awarded its costs and reasonable attorney's fees incurred in making this request.

## **COUNT TWO**
## **BREACH OF FIDUCIARY DUTY**

86.

UBRICA hereby reasserts and realleged the allegations contained in the above paragraphs as if fully set forth herein.

87.

Defendant Karuu was one of the directors of UBRICA and was elected as the CFO/Treasurer of UBRICA on September 9, 2014.

19

88.

Defendant Karuu continued in his position as CFO/Treasurer of UBRICA until December 29, 2020.

89.

Defendant Karuu owes UBRICA fiduciary duties by virtue of Defendant Karuu's position as UBRICA's CFO/Treasurer, as well as by virtue of the access and control over the assets, records, and confidential information of UBRICA that Defendant Karuu enjoyed.

90.

The fiduciary duties owed by Defendant Karuu to UBRICA include the duties of loyalty, honesty, and utmost good faith and the duty to avoid self-dealing.

91.

Defendant Karuu further has the duty to disclose to UBRICA any information relevant to the successful operations of UBRICA.

92.

By his various acts and omissions, Defendant Karuu has committed multiple breaches of his fiduciary duties to UBRICA, such as acting for the sole benefit of himself by, among other things: (i) placing his own personal and pecuniary interests above those of UBRICA; (ii) failing to properly maintain complete books

and records for UBRICA; (iii) refusing to fully comply with requests for information and records by UBRICA; (iv) improperly manipulating and/or diverting assets and profits of UBRICA; (v) unlawfully obtaining and converting for his personal use and benefit UBRICA assets and property to the detriment of UBRICA; and (vi) wasting corporate assets and impairing the value of UBRICA.

93.

Defendant Karuu has breached his fiduciary duty to UBRICA by failing to discharge his duties in good faith and with the degree of care an ordinarily prudent person would under similar circumstances.

94.

Such breaches by Defendant Karuu have directly and proximately caused damage and harm to UBRICA in an amount to be determined and proven at trial.

95.

The actions by Defendant Karuu in breach of his fiduciary duties demonstrated willful misconduct, malice, wantonness, oppression, and that entire want of care raising the presumption of conscious indifference to the consequences. As a result, UBRICA is entitled to punitive damages under O.C.G.A. § 51-12-5.1, in an amount to be determined by the enlightened conscience of an impartial jury.

96.

Defendant Karuu acted in bad faith with respect to his fiduciary duties, was and continues to be stubbornly litigious, and caused UBRICA unnecessary trouble and expense, therefore entitling UBRICA to reimbursement of its expenses of litigation and attorneys' fees, in an amount to be proven at trial, pursuant to O.C.G.A. § 13-6-11.

## COUNT THREE
## FRAUD

97.

UBRICA hereby reasserts and realleged the allegations contained in the above paragraphs as if fully set forth herein.

98.

Upon taking on the role of UBRICA's CFO/Treasurer, Defendant Karuu falsely represented that he would maintain the books and accounts of UBRICA according to generally-accepted accounting principals and that he would use UBRICA's fund for the sole benefit of UBRICA.

99.

Defendant Karuu failed to disclose to UBRICA that over the course of several years, he had failed to maintain the books and records of UBRICA and improperly used UBRICA's funds for his personal expenses and to benefit his

friends and relatives including, but not limited to, his daughter Annestella N. Khirrecu, and his wife Rose Kirechu.

100.

At the time Defendant Karuu made the foregoing misrepresentations and omissions of material fact, Defendant Karuu knew the misrepresentations and omissions of material facts were false.

101.

Defendant Karuu acted with the intent to induce UBRICA to act or refrain from acting.

102.

UBRICA justifiably relied on Defendant Karuu's misrepresentations and omissions of material fact related to his actions as UBRICA's CFO/Treasurer.

103.

O.C.G.A. §51-6-2(a) provides that willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action. Concealment of a material fact, done in such a manner as to deceive and mislead, supports an action for fraud.

104.

O.C.G.A. §51-6-2(b) provides that in all cases of deceit, knowledge of the falsehood constitutes an essential element of the tort. A fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false.

105.

UBRICA suffered damages as a result of Defendant Karuu's fraud in an amount to be determined by the enlightened conscience of an impartial jury.

## COUNT FOUR
## PUNITIVE DAMAGES

106.

UBRICA hereby reasserts and realleged the allegations contained in the above paragraphs as if fully set forth herein.

107.

Defendant Karuu's conduct as described above evidences willful misconduct, malice, fraud, wantonness, oppression, that entire want of care which would raise the presumption of conscious indifference to consequences.

108.

UBRICA is thus entitled to recover an award of punitive damages, pursuant to O.C.G.A. § 51-12.5.1 to punish, penalize, or deter Defendant Karuu in an amount to be determined by the enlightened conscience of an impartial jury.

## COUNT FIVE
## ATTORNEY'S FEES AND COSTS

109.

UBRICA hereby reasserts and realleged the allegations contained in the above paragraphs as if fully set forth herein.

110.

Defendant Karuu has acted in bad faith and has been stubbornly litigious and caused UBRICA unnecessary trouble and expense for which UBRICA is entitled to recover his costs and expenses, including reasonable attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 and/or § 9-15-14 in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

111.

UBRICA respectfully demand a trial by jury as to all claims triable by jury.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, UBRICA respectfully prays for the following relief:

1. That all claims triable by a jury be tried by a jury;

2. That the Court find in favor of UBRICA on each of its claims against Defendant Karuu and enter judgment in favor of UBRICA on its claims;

3. That the Court award UBRICA all recoverable damages pursuant to its claims, including compensatory damages and interest thereon;

4. That judgment be entered in favor of UBRICA against Defendant Karuu for punitive damages, pursuant to O.C.G.A. § 51-12-5.1, in an amount to be assessed in the lightened conscience of the trier of fact to deter Defendant Karuu from similar misconduct in the future;

5. That the Court award UBRICA its expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11, § 9-15-14, and other statutory law;

6. That the Court award UBRICA the amount of its costs associated with this action; and

7. That the Court grant UBRICA such other further relief as the Court may deem just and proper.

Respectfully submitted this 9th day of June, 2021.

*s/Angelina Whitaker*
Angelina Whitaker
Georgia Bar No. 370141
awhitaker@blueskylaw.com
D. Barton Black
Georgia Bar No. 119977
bblack@blueskylaw.com

**BLUE SKY LAW**
4045 Orchard Road, Building 400
Atlanta, Georgia 30080
Phone:  (678) 496-9800
Facsimile:  (678) 547-3119

*Counsel for Plaintiff*

27